TIMOTHY COURCHAINE
United States Attorney
District of Arizona
Matthew Williams
Assistant U.S. Attorney
Arizona State Bar No. 029059
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Matthew.Williams3@usdoj.gov

LORINDA LARYEA
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice
William Hochul III
Shane Butland
Trial Attorneys
1400 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-538-4256
Email: William.Hochul.iii@usdoj.gov

Attorneys for Plaintiff

☒ FILED ☐ LODGED
Jun 26 2025
CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>IRA DENNY,<br>Defendant. | No. CR-25-00944-PHX-SPL (JZB)<br>**INFORMATION**<br>**VIO:** 18 U.S.C. § 1349 (Conspiracy to Commit Health Care Fraud)<br>18 U.S.C. § 981(a)(1)(C);<br>28 U.S.C. § 2461;<br>18 U.S.C. § 982(a)(7)<br>(Forfeiture Allegations) |

THE UNITED STATES ATTORNEY'S OFFICE CHARGES:

**BACKGROUND**

At all times relevant to this Information:

**The Medicare Program**

1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was

administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare covered different types of benefits and was separated into different program "parts." Medicare "Part A" covered, among others, health services provided by skilled nursing facilities, hospices, and home health agencies. Medicare "Part B" covered, among other things, medical items and services provided by physicians, nurse practitioners, group practices, and other qualified health care providers, that were medically necessary and ordered by licensed medical doctors or qualified health care providers.

4. Physicians, nurse practitioners, group practices, and other health care providers (collectively, "providers") that provided services to beneficiaries were able to apply for and obtain a "provider number." A provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for items and services provided to beneficiaries.

5. A Medicare claim was required to contain certain important information, including: (a) the beneficiary's name; (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (e) the name of the referring or rendering physician or other health care provider, as well as a unique identifying number, known either as the Unique Physician Identification Number or National Provider Identifier. The claim form could be submitted in hard copy or electronically via interstate wire.

6. When submitting claims to Medicare for reimbursement, providers were required to certify that: (a) the contents of the forms were true, correct, and complete;

(b) the forms were prepared in compliance with the laws and regulations governing Medicare; and (c) the items and services were reasonable and medically necessary.

7. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations.

8. As a requirement to enroll as a Medicare provider, Medicare required providers to agree to abide by Medicare laws, regulations, and program instructions. Medicare further required providers to certify that they understood that payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions, including the Federal Anti-Kickback Statute. Accordingly, Medicare would not pay claims procured through kickbacks and bribes.

**The Defendant and Related Entities**

9. Defendant IRA DENNY was a resident of Surprise, Arizona, in the District of Arizona. IRA DENNY was a nurse practitioner licensed by the State of Arizona and an enrolled Medicare provider. From in or around June 2023 through in or around March 2024, IRA DENNY applied amniotic allografts sold by Company 1 to Medicare beneficiaries as an independent contractor with APX Mobile Medical LLC ("APX").

10. APX was a limited liability company formed under the laws of Arizona, with its principal place of business in Phoenix, Arizona. APX was an enrolled Medicare provider and submitted claims to Medicare for payment, including claims for the furnishing of allografts purchased from Company 1.

11. Apex Medical LLC ("Apex") was a limited liability company formed under the laws of Arizona, with its principal place of business in Phoenix, Arizona. Apex arranged for and recommended the ordering and purchasing of allografts sold by Company 1. Apex referred patients to APX for the furnishing of allografts purchased from Company 1.

12. Company 1 was a limited liability company formed under the laws of Texas,

with its principal place of business in Fort Worth, Texas. Company 1 was a wholesale distributor of various amniotic allografts. Medicare reimbursed claims for allografts sold by Company 1 at an extremely high rate, exceeding $1,000 per square centimeter for certain allografts.

**COUNT 1**
**18 U.S.C. § 1349**
**(Health Care Fraud Conspiracy)**

13. Paragraphs 1 through 12 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

14. Beginning in or around June 2023, and continuing through in or around March 2024, in the District of Arizona and elsewhere, IRA DENNY did knowingly and willfully combine, conspire, confederate, and agree with individuals associated with APX and Apex, and others known and unknown to the United States, to execute a scheme and artifice to defraud Medicare, a health benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

**Purpose of the Conspiracy**

15. It was the purpose of the conspiracy for IRA DENNY and others, known and unknown to the United States, to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare for items and services that were (i) medically unreasonable and unnecessary, (ii) ineligible for reimbursement, and (iii) procured through kickbacks and bribes; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of IRA DENNY and his co-conspirators, and to further the fraud.

**Manner and Means**

The manner and means by which IRA DENNY and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following:

16. From approximately June 2023 through approximately March 2024, IRA DENNY, as an independent contractor with APX, agreed with others to order and apply amniotic allografts that were medically unreasonable and unnecessary, ineligible for reimbursement, and procured through kickbacks and bribes.

17. During this time, Apex paid medically untrained sales representatives to identify elderly Medicare beneficiaries with a wound or wounds of any stage to which Company 1's allografts could be applied.

18. Apex sales representatives referred these patients to APX's nurse practitioners, including IRA DENNY, based on the sales representatives' own assessments of the patients' wounds.

19. APX's nurse practitioners, including IRA DENNY, applied Company 1's allografts to patients identified by Apex sales representatives without exercising independent medical judgment and in the amount and frequency determined by Apex and its sales representatives.

20. From approximately June 2023 through approximately March 2024, APX billed Medicare approximately $209,359,607 for amniotic allografts purchased from Company 1 and ordered and applied by IRA DENNY that were medically unreasonable and unnecessary, ineligible for reimbursement, and procured through kickbacks and bribes. Medicare paid APX approximately $138,590,922 based on those false and fraudulent claims. APX paid IRA DENNY approximately $302,000 in exchange for ordering and applying the amniotic allografts billed to Medicare.

**FORFEITURE ALLEGATIONS**
**(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461;**
**18 U.S.C. § 982(a)(7))**

21. The above allegations contained in this Information are hereby incorporated by reference as if fully set forth herein for the purpose of alleging forfeiture against the defendant, IRA DENNY, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), and Title 28, United States Code, Section 2461.

22. Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), together with Title 28, United States Code, Section 2461, as a result of the foregoing violation as charged in Count 1 of this Information, the defendant, IRA DENNY, shall forfeit to the United States: any property, real or personal (a) which constitutes or is derived from proceeds traceable to the commission of the offense, and (b) that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

23. Such property includes, but is not limited to, a forfeiture money judgment, in an amount to be proved in this matter, representing the total amount of proceeds and/or gross proceeds obtained as a result of the defendant's violation as charged in Count 1 of this Information.

24. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, IRA DENNY, shall forfeit substitute property, up to the value of the properties described above or identified in any subsequent forfeiture bills of particular, if, by any act or omission of the defendant, the property cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court;

/ / /

/ / /

has been substantially diminished in value; or has been commingled with other property that cannot be subdivided without difficulty.

Dated this 24th day of June, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

Digitally signed by MATTHEW WILLIAMS
Date: 2025.06.24 12:50:34 -07'00'

Matthew Williams
Assistant U.S. Attorney

LORINDA LARYEA
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

Digitally signed by MATTHEW WILLIAMS
Date: 2025.06.24 12:50:52 -07'00' for

William Hochul III
Shane Butland
Trial Attorneys